## CHASE v. CLINTON COUNTY.

1. CONTRACTS—"CONTRACTOR" DEFINED—WORDS AND PHRASES.

   While, in a strict sense, both parties to a contract are contractors, yet in a general sense, as a commonly recognized reserved designation, a contractor is one who enters into a contract to do a special piece of work for another according to price, specifications, and terms agreed upon.

2. NEGLIGENCE—BREACH OF CONTRACT—TORT ACTION WILL NOT LIE FOR DELAY CAUSED BY COURT INJUNCTION.

   In a tort action by a road contractor against a board of county road commissioners for negligent delay in the execution of the contract, alleging the breach of a provision therein headed "Liabilities of Contractors," which provided for commencing work as directed by the commissioners within ten days after signing the contract, even if any duty or liability was imposed on defendants thereby, which is questionable, said alleged breach may not be relied on by plaintiff, where the delay was caused by a court order enjoining proceedings under the contract until further order of the court, plaintiff on signing the contract agreed to abide by said order, he was equally responsible with defendants for securing early release of said injunction, and he could have pressed for speedier determination if he saw fit.

3. CONTRACTS — CONTRACTOR NOT RELIEVED BECAUSE OF EVENTS WHICH MAKE PERFORMANCE MORE EXPENSIVE.

   Subsequent events, which in the nature of things do not render performance of a contract impossible, but only render it more difficult, burdensome, or expensive, will not operate to relieve the contractor.

4. TORTS—ACTIONS NEVER MINGLED.

   Actions ex delicto and actions ex contractu are never mingled in the law.

5. SAME—WHEN BREACH OF CONTRACT A TORT—DISTINCTION BETWEEN TORT AND NONFEASANCE.

   Although, accompanying every contract, is a common-law

---

¹Contractor, 13 C. J. p. 211 (Anno); 14 R. C. L. 67; 3 R. C. L. Supp. 163; 28 R. C. L. 762; ²Highways, 29 C. J. § 354; ³Contracts, 13 C. J. § 706; 12 A. L. R. 1273, 6 R. C. L. 998; 2 R. C. L. Supp. 261; 4 R. C. L. Supp. 455; 6 R. C. L. Supp. 423; ⁴Actions, 1 C. J. § 244; ⁵Torts, 38 Cyc. p. 429 (Anno).

duty to perform the thing agreed to be done with care, skill, reasonable expediency and faithfulness, and a negligent failure to observe any of these conditions is a tort as well as a breach of the contract, a distinction is made in case of a nonfeasance in performance of a contract, it being held that an action sounding in tort cannot be founded thereon.

6. SAME—BURDEN OF PROOF—TORT NOT MADE OUT WHERE PROOF INSUFFICIENT TO SHOW EVEN NONFEASANCE.

   Where, in a tort action apparently based upon alleged failure of a board of county road commissioners to more fully observe an implied contractual obligation to more promptly secure dismissal of a restraining order of the court against it, plaintiff's proofs fail to sustain the burden of proof to make even a case of negligent nonfeasance, he is not entitled to recover.

Error to Clinton; Hart (Ray), J., presiding.    Submitted April 28, 1927.    (Docket No. 69.)    Decided January 19, 1928.

Case by Adelbert E. Chase against the county of Clinton and others for alleged negligent delay in the execution of a highway contract.    Judgment for defendants.    Plaintiff brings error.    Affirmed.

*Frank L. Dodge* and *Charles W. McGill*, for appellant.

*Oliver Spaulding*, for appellees.

BIRD, J.    Plaintiff brought this action to recover damages alleged to have been suffered through negligence of the board of county road commissioners of Clinton county causing costly delay in the execution by him of a contract for construction of a State reward road in that county.    His declaration is based on tort, in a plea of trespass on the case, alleging actionable negligence on the part of the board of county road

---

⁶Highways, 29 C. J. § 354.

commissioners in not sooner taking proper steps to relieve the contract from an injunction against it issued by the circuit court of Clinton county, in chancery, restraining the board from all further proceedings under the contract, after signing it.

Construction under said contract was authorized by and undertaken pursuant to provisions of Act No. 59, Pub. Acts 1915 (1 Comp. Laws 1915, § 4671 *et seq.*), known as the "Covert act." No question is raised as to the regularity of the proceedings leading up to and awarding the contract to plaintiff under provisions of that statute. The amount of his bid was $27,000. It was accepted and contract awarded to him as the lowest bidder on March 30, 1917. Before the parties had time to formally close the contract in writing an injunction restraining the board of county road commissioners from entering into it or taking any further proceedings in relation thereto was issued and served under a bill of complaint filed at the instance of certain citizens and taxpayers of the county, alleging invalidity of the proceedings, chiefly on the ground that the Covert act was unconstitutional. Plaintiff was not made a party to said suit but was at once advised of it. A motion was promptly made by defendants for dismissal of said injunction and the same was heard on the evening of March 31, 1917. After hearing counsel for the respective sides, the court made an order modifying the injunction by allowing the board of county road commissioners to sign the proposed contract for construction of the road, but staying it from all further proceedings under the contract, until further order of the court. At this hearing plaintiff and his brother, a practicing attorney of 20 years' standing who became his bondsman under the contract, were present and fully informed of the nature of the so modified restraining order. It was then indorsed by plaintiff over his signature as follows:

"Adelbert E. Chase, the contractor in said contract, agrees to abide the above order."

The parties thereupon executed the contract, dated March 31, 1917, and a bond in the sum of $3,000 for its proper execution signed by plaintiff and his brother as bondsman was accepted and filed.   Defendants took prompt steps to bring the injunction suit to issue and hearing.   They appeared generally, answered issuably, and the board of county road commissioners filed a request, on April 20, 1917, that the case be placed on the calendar for hearing at the next ensuing term.   Following docket entries in the case only show a substitution of attorneys, on January 26, 1918, and a stipulation dismissing the bill of complaint filed March 11, 1918.

Plaintiff thereafter took steps to construct the road and began work early in April, 1918, about the 11th, as he testifies, without complaint or protest so far as appears.   In November, 1919, when the contract was somewhere near half performed, he applied to the board of county road commissioners for an increase of compensation under his contract, on the ground that entry of this country into the World War subsequent to its execution had resulted in disturbed economic conditions, scarcity of labor, increase of wages, and cost of material.   After consulting with the attorney general's office, the commission advised him it could not comply with his request.   Plaintiff thereafter completed the road according to the terms of his contract and was paid by the county the full amount of the contract price.

Based upon such situation, the charge of actionable tort in plaintiff's declaration is covered by the following allegations:

"It was the duty of the defendant, said county of Clinton, by its board of supervisors and the board of county road commissioners, and all other parties acting

as agents of said county, to move the court to a reasonably speedy trial and decree in said injunction matter, and do all other acts and things on their part respectively to be performed, to put this plaintiff in possession of the premises of said proposed road, thereby reasonably enabling him to go speedily forward with said construction to finish the same within the time limited by said contract, to wit: the first day of December, 1918; and whereas the said board of county road commissioners and board of supervisors of said county did not reasonably or seasonably move this court nor did they take any steps or action on their part, or either of them, to move the court until the 11th day of March, 1918.   *   *   *

"Plaintiff was unnecessarily delayed in the construction of said road, being compelled without fault or negligence on plaintiff's part to construct the same during the abnormally high price period of labor, material, and all matters entering into the construction of said State reward road in the years 1918, 1919, and 1920, at a greatly increased and advanced cost of labor, materials and loss of time."

Defendants pleaded the general issue and the board of road commissioners gave notice of special defenses. The case was heard before the court without a jury. The trial court, being of opinion no actionable tort negligence was shown, rendered a judgment for defendants.

Plaintiff's testimony is largely devoted to showing that, after the fall of 1917, financial conditions were so disturbed by the war that costs of everything connected with his contract greatly increased, with unavoidable delays in securing material and labor, and instead of making, as he could have done had the delay and war not intervened, a profit on his contract of over $7,000, he completed it later at an actual cost to him of some $7,000 more than the contract price. It was contended for defendants that the contract could have been performed after the time plaintiff commenced it for $2,000 less than the contract price. The evidence is convincing that actual cost of con-

structing the highway was greatly enhanced by advent of war conditions; but having found no actionable tort shown, the trial court did not pass upon that question of fact, and it is not before us.

The agreement which the parties signed by permission of the court was evidently prepared on a filled out printed form for State highway construction contracts, as interspersed parenthetical directions and numerous subheading of sections with familiar elaboration of negative and positive provisions indicate. In it, as plaintiff contends, time is made of the essence of the contract. To that point he especially stresses, as showing defendants first breached it, a provision in paragraph 9, under the heading, "Liabilities of Contractors," requiring, amongst other things, that the contractor—

"commence and prosecute the work on the road at such points as he may be directed to by the board of county road commissioners within ten days from and after signing the contract, and shall prosecute the work rapidly and continuously unless delayed by orders from the board of county road commissioners. He further agrees to·complete the same on or before the first day of December, 1918."

A money penalty is provided for his failure to complete the contract within that time; but the board, on recommendation of the officer in charge, is authorized to extend the time limit, "giving satisfactory reasons for such extension."

It is not for us to reason, or wonder, why the court permitted the defendant board to sign this unmodified contract while steadfastly restraining it under a penalty from any further steps in relation thereto, or why any one would wish to sign it under the circumstances shown; but taking the provision plaintiff appeals to as it reads, under the heading quoted, ·it can well be questioned whether it imperatively imposes a duty or any liability on defendants. In it the two

parties are distinguished as "contractor" and "the
board of county road commissioners." While, in a
strict sense, both parties to a contract are contractors,
yet in a general sense, as a commonly recognized re-
served designation, a contractor is one who enters into
a contract to do a special piece of work for another
according to price, specifications, and terms agreed
upon. *McCarthy* v. *Second Parish of Portland*, 71
Me. 318, 322; *vide*, also, "contractor"· in Winfield on
Adjudged Words and Phrases. Furthermore, plaintiff
with full knowledge of the court's refusal to further
modify the injunction after a special hearing upon
that question, agreed in writing *to abide by the order*
as made. Equally, if not more, interested in having
the injunction released, he could have at any time
intervened as a party to that suit and pressed it for
a speedier determination if he so saw fit.

Arguments in plaintiff's brief as to the effect of this
country engaging in war subsequent to the parties'
signing this contract are of scant legal significance.
No doctrine of frustrated adventure by reason of war
is involved here. The war did not make performance
of the contract by him impossible, for he fully per-
formed it and was paid the full contract price there-
for. Economic unprofitableness is not the equivalent
of impossibility of performance. Subsequent events,
which in the nature of things do not render perform-
ance impossible but only render it more difficult,
burdensome, or expensive, will not operate to relieve
the contractor. *Columbus Railway, Power & Light
Co.* v. *City of Columbus*, 249 U. S. 399 (39 Sup. Ct.
349, 6 A. L. R. 1648). *Vide*, also, 6 R. C. L. p. 977.
This is text-book law equally applicable in time of
war or peace.

Plaintiff's action is founded on a charged tort, con-
sisting of actionable negligence of the board in failing
to sooner secure release from a restraining order
against it imposed by the court in an injunction suit

by third parties.    It is shown that defendants acted promptly and energetically by preliminary proceedings to obtain relief from the injunction, and failing in that effort, promptly pleaded issuably, noticing the case for hearing at the next ensuing term.    There is no proof or presumption they were not ready and willing to try the case then.    There are too many possibilities as to causes of delay in a pending chancery suit to impute it without proof to actionable negligence of one of the parties.    That suit involved the constitutionality of an important highway law of general application throughout the State, and had it been heard at the next ensuing summer term, it would in all probability have been appealed, as cases involving constitutional questions usually are, to this court for final determination.    With unimpeded expedition it could not have been submitted to this court until its next ensuing October term.    Highway construction work is in its nature mainly seasonal, and claimed delay during winter months of scant importance.    In the meantime constitutionality of the Covert act was sustained by this court in other litigation which came before it, and the injunction suit in question here was dismissed by stipulation before time for active road work the next spring.

When plaintiff began performance of his contract, about April 11, 1918, this country had been for over a year under the disturbed conditions of a state of war, declared April 6, 1917.    What he might have legally done during that year in avoidance of his contract and ensuing losses is not before us.    What he did do was to proceed with and complete performance of it, receive the full contract price therefor and then bring this action in tort for damages.    A fundamental distinction of torts as applied to legal actions is thus stated in 26 R. C. L. p. 756, under the heading, "Definitions and Distinctions:"

"Actions *ex delicto* and actions *ex contractu* are never mingled in the law. Actions for the redress of torts always sound in damages. In its widest signification, 'trespass' means any violation of law. In its most restricted sense, it signifies an injury intentionally inflicted by force either on the person or property of another."

Following this, it is pointed out how liability for tort may grow out of or in connection with a contract, and the subject is elaborated under the titles, "Basis of Liability, Generally," and "Source of Duty; Breach of Contract;" where the principle is stated, on page 758, under which plaintiff apparently planted this tort action, as follows:

"Whenever a negligent breach of a contract is also a violation of a common-law duty, an action *ex delicto* will lie. Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. If the transaction complained of had its origin in a contract which placed the parties in such a relation that in attempting to perform the promised service, the tort was committed, then the breach of the contract is not the gravamen of the suit. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action on the case. Based on the principle above indicated, the firmly established rule is that for injuries resulting from the unskilful or otherwise negligent performance of a thing agreed to be done, an action *ex delicto* will lie, notwithstanding the act complained of would also be ground for an action *ex contractu.*"

But in concluding the paragraph, the limitation of that rule is recognized as follows:

"A distinction is made, however, in case of nonfeasance in performance of a contract, it being held that an action sounding in tort cannot be founded thereon."

This so-called "important distinction" is reviewed with citations in 12 L. R. A. (N. S.) 929 (annotations).   Amongst other authorities cited is *Tuttle* v. *Gilbert Manfg. Co.,* 145 Mass. 169 (13 N. E. 465), which squarely states the distinction and clearly explains the reason for it.   The most that plaintiff appears to claim is negligent nonfeasance of the board in failure to more fully observe an implied contractual obligation to more promptly secure dismissal of the court's restraining order against it, and, as we view it, his proofs fail to sustain the burden of proof even to that extent.   We discover no reason to disturb the conclusion of the trial court that no actionable negligence is shown.

The judgment will stand affirmed.

FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.